Under the terms of the contract and the promissory note, White Cloud had a, excuse me, Prolease had a right of setoff for a number of areas. One was if there was a diminution of business during the 12-year period following the closing, and they would have a right of setoff if they incurred damages by reason of breaches of representations and warranties by Mr. White, and White Cloud would survive the closing. At the trial, the Court found that there was a diminution of business, and the Court found that there were breaches of representations and warranties, and allowed Prolease a setoff in the full amount that it requested of $612,772. The Court did, however, deny a claim for breach of fiduciary duty which Prolease asserted against Terry White. After the closing, Mr. White became a vice president and employee of Prolease. At the same time, he continued to operate some other companies, one of which was called White Cloud Personnel, which Prolease did not acquire. And White Cloud Personnel was a company in which what occurred is that an employee of White Cloud Personnel, Mr. Gary Hopkins, suffered an injury, made a claim under workman's comp, and Mr. White caused the claim to be submitted to Prolease's carrier. Prolease's carrier, Liberty Mutual, then paid out $47,000 to Mr. Hopkins on account of the claim. When it came to the attention of Prolease that there was an employee for whom money was paid out who was not an employee of Prolease, they reported it to Liberty Mutual. Now, we asserted a claim, or Prolease asserted a claim against Mr. White for breach of fiduciary duty in conjunction with his activities as an employee of Prolease. One of his duties was workman's compensation insurance. And as there is no question that Mr. White did a number of things that led to this payment by Liberty Mutual. But what happened after that, after you complained about it? Liberty Mutual sued Mr. White and White Cloud Consulting, and there was a settlement of about $20,000. However, as we will find out, that had no effect on the damages incurred by Prolease as a result of Liberty Mutual paying out the $47,000. Even though it got funds back? Even though it received funds back. Why is that that it would have no effect? I don't understand why that would be. Well, we had the testimony of our expert, Mr. Stephen Pfeiffer, who indicated that insurance companies typically will penalize an insured for the smaller claims to make up for the larger claims. And in essence, this gives them an excuse, so to speak, to collect additional premiums from White Cloud. It does seem counterintuitive, admittedly. But insurance and workman's comp insurance is a very complicated field. But Mr. Pfeiffer did specifically testify based on his experience. Well, you've got an expert that supported the damage. You had an expert that supported that damage, too. We had an expert that supported it. Actually, White Cloud did not proffer any counter expert. Okay. But in terms of the breach of agreement. I have just a question to help me understand the context here. I understand there's cash in a promissory note at the start. How much is the cash and how much is the, in addition to the million dollar promissory note, how much was the cash? $500,000. And of the million dollar promissory note, so it's one and a half million. And then the $600,000, how does that come in? Does that offset against the note? That's offset against the million dollar promissory note. So it ends up roughly. Three hundred and some thousand dollars. On the note. Plus the half million cash. Correct. Okay. Go ahead. Now, what occurred with Mr. White and this workman's comp claim was that he canceled. He put into play steps where he took actions or there were inactions which led to this filing of this claim. He canceled the workman's compensation insurance for White Cloud personnel. Even though he knew that the law obligated him in Idaho to carry workman's comp insurance. He admitted he could have insured his employees under another company that he owned, Vanite, which police did not acquire. But he said White Cloud, excuse me, Vanite consisted mostly of White Collar employees. Whereas White Cloud personnel was Blue Collar and he didn't want to mix the two because that would increase, the Blue Collar would increase the premium of the White Collar employees at Vanite. He knew he could have obtained insurance through a state insurance fund, but he affirmatively elected not to do so. He admitted he never received a policy from ProLease showing that his employees from White Cloud personnel were insured. And he never received an invoice from ProLease. So it was particularly obvious that Mr. White, in supervising actually another employee of his, Ms. Somerset, an employee of ProLease, when he told her just to continue business as you have been doing in the past. So when you take all these factors into account, it indicates a situation that Mr. White breached his fiduciary duty as an employee of ProLease by permitting this claim to be submitted. Now, was your claim like a, this is under state law, correct? That is correct. And is that a breach of fiduciary duty of care or a breach of fiduciary duty of loyalty or some other type of fiduciary duty or is it undefined? I believe it's a breach of fiduciary duty of care. Basically like a negligence except a higher standard under state law? No, well, actually, under state law, a breach of fiduciary duty can be based on intentional conduct or negligence. And in this case, one of our points of appeal is that the court never considered negligence. The lower court never considered the negligence aspect. It only looked at it from an intentional aspect and made absolutely no findings, even though we raised it in our post-trial memorandum, that the court should have looked at it from a negligence perspective. But were you claiming it was an, you were not claiming it was an intentional wrong or were you? In the, we were claiming in the alternative. Did you claim there was a conflict of interest in White's having an interest in the two companies and getting something effectively, getting something for nothing for one of his companies? Well, yeah, we did raise in the court below the fact that when he became employed by Prolease, he signed a contract saying he would devote his full time effort to Prolease, whereas apparently he was not doing so. He was still running White personality. That is correct. And that was where this slip up occurred, wasn't it? That is right. Now, the court below also indicated that there was confusion about whether Prolease would provide this workman's compensation insurance, which we submit is erroneous for a number of reasons. One is it would have been illegal for Prolease to have insured another company's employees. And when Mr. White was asked at the trial as to whether Mr., whether Prolease indicated that they would insure his employees, this is at Excerpt 120, when he was asked, Mr. Ramamurthy, tell you I will take care and cover and place on my insurance the employees of White Cloud Personnel, Mr. White responded in so many words, no. So there was no confusion on this issue. Thirdly, if Prolease had agreed to insure White Cloud Personnel employees, surely that would have been in writing somewhere in the contract or somewhere. There was no written instrument proffered to show that White Cloud, that Prolease had agreed to pay to cover the employee. So I think one of the points on our appeal is that even if one presumes that Mr. White didn't even know about the Hopkins claim and he put in motion the actions that would have been reasonably foreseeable from a negligence perspective, that this would have happened by not carrying the insurance, by telling Ms. Somerset to continue doing business as she had before. The Court also relied on the testimony of Mr. Anthony Marban, who had been the chief operating officer of Prolease, who said that he spoke with Ms. Somerset and he concluded that it was an innocent mistake. Well, again, we would take exception with that because that would have been hearsay. In fact, the other side had called, I believe, subpoenaed Ms. Somerset to testify but chose not to call her. And so in the Court's conclusions that it was an honest mistake, it only looked at it from Mr. Marban's statement, which we would submit was hearsay. The ---- Was there a challenge to that statement? We objected. Was that in evidence? Yes, sir. Objection on a hearsay ground? Yes. And the Court made a ruling that it was admissible? Well, what the Court did, because it was a bench trial, was to reserve on all of these hearsay objections. Okay. And so I don't remember a specific ruling, but since the Court in its lower ---- in its opinion indicated it was relying on Ms. Somerset's statement to Mr. Marban, presumably it admitted it as hearsay, although there was no exception. You said reserved ruling, though procedurally. Did you have to bring it back to the Court's attention again? We ---- only in terms of our proposed trial memorandum, we brought it to the Court's attention. The other finding of the Court was that there was insufficient proof of damages. And this is where we brought in Mr. Pfeiffer, who testified as to the methodology that an insurance company uses to compute premiums based on prior losses. And a loss such as Mr. Hopkins, which occurred in 1999, has an effect on an insured, like Prolease, for a three-year period, starting with the first full year after the accident. So in this case, it would have been ---- it will affect Prolease's premiums in 2001, 2002, and 2003. And he did a calculation which is a bit complicated based on something called EMOD, an experience modification, and determined that there would have been a 3-point or 3 percent increase in Prolease's premiums. And since Prolease was ---- paid quite a bit of insurance premiums, $3.3 million, the 3 percent would translate into $99,000 additional premium times three years is $295,000. Let me ask a question about that. Was there testimony from your actual insurance carrier that they intended to raise rates because of this claim? No, there was not. Okay. Another question is, did your expert say that, in his opinion, the carrier would raise the rates if the claim had been submitted erroneously? It should have been the experience of a different company. Again, he testified to the effect that even though it was submitted erroneously, it would still have an effect on Prolease's premiums. And even though the insurance carrier brought suit and recovered its payments back? Well, it recovered part of it. It recovered about $20,000. That was his exact testimony. So his view is that whatever they recovered back isn't material? That is correct. It's not that they would raise the rates based on the net cost? That's right. They would do so. Is it in the record who the carrier is? Liberty Mutual. And there's no testimony from the carrier? The only testimony that there was was, again, our friend Mr. Marban, the disgruntled former employee who said that he spoke to Liberty Mutual and they told him that they would not take it into account. Now, there's a couple of issues on that. One is that was also hearsay. And secondly, that contradicts Mr. Was that objected to? Yes. And I might point out that Mr. Marban was never qualified as an expert. He was a lay witness. But even when he was questioned in his deposition, he was asked. And so when Prolease would go to a carrier, based on your understanding of workman's comp insurance, would that carrier take the Hopkins claim into effect? This is on page 91. His answer was, that's actually a pretty basic question. They would take every claim into effect. You know, I'm not certain procedurally how we deal with I may have to do a little procedural research. Maybe you can help me. How do we deal with a case of a hearsay objection if the judge doesn't make an express ruling on it? He doesn't give his reasons. Well, I think. Because you told me the first one, there's no ruling in the record. It's just that he refers to the testimony. The same thing with the second. So we don't know whether he thought it was not hearsay or if he thought it was in some exception or if he thought it had some other indicia of catch-all reliability. He never said. All I know is that we did raise it in our post-trial memorandum that those statements were hearsay. And it's a post-trial memo before you get his decision in order? That's correct. Both sides submitted post-trial memoranda. I'm running short on time. The other point we have here is our claim for attorney's fees. The attorney's fees arise out of the promissory note and purchase contract. Promissory note provides that the prevailing party in any litigation would be entitled to legal fees. And we submit that based on the fact that we were provided every single penny of the set-off against the promissory note, that we were the prevailing party in this case. Isn't that attorney's fee clause related to the performance on the note and collection of the note and so on? Isn't this dispute kind of collateral to that note? What would be collateral to the note would be, for example, the fact that we didn't prevail on the breach of fiduciary duty claim. We had also filed a claim for fraud on which we didn't prevail. That would be collateral because that was not covered by the note. But the specific claims on which we did prevail arose directly from the note. We asked for a set-off because of the diminution of business, which the note provided that we were allowed. Prolease was permitted a set-off against the note if there were damages arising from breaches of representations and warranties. And every single penny was awarded to Prolease. Thank you. Counsel, before you sit down, I'm not blaming you, but I'm completely confused by the points that you apparently are raising here. And can you just briefly set forth what points do you base your appeal upon? I understand the attorney's fee point. Are you claiming that the set-off was wrong? No. We're not claiming anything on the set-off. We are not appealing the set-off. The reason I bring up the set-off is because it relates to the prevailing party on attorney's fees. All right. Now, how about on the question on the workman's compensation? On that, there are three aspects to that appeal. One is the finding that Mr. White did not breach his fiduciary duty. Also, the fact that the court did not consider that he could be found liable for breach of fiduciary duty under a negligence standard. The court never considered the negligence aspect. What are we supposed to do with that? Because as I understand it, the law is quite clear that unintentional conduct can lead to a breach of fiduciary duty. And you say the court didn't pass upon that. The court just never mentioned it at all, even though in our pre-trial post-trial memorandum, we indicated that Mr. White should be found because of either intentional conduct or negligent conduct. Was that raised before the district court? Yes, in our post-trial brief. Well, what are we supposed to do? Just reach out and say that the district court was wrong and he could have found a breach of fiduciary duty? Well, the court could remand it back to the district court with instructions to make a finding as to whether Mr. White could be held was liable under negligent standard. And I think that under the law, that's a de novo, actually a de novo review by this court. So in any event, the workman's compensation issue is involved here in terms of whether there was a surcharge on the policy? Is that the idea? Yes. The court found that there was insufficient proof of damages. And we proffered, Mr. Pfeiffer, and the courts, especially in this circuit, have held that when you have an expert, especially when it's unrebutted, the court cannot arbitrarily reject a testimony unless they give clear and convincing reasons. The only thing that the court did here was to say, as many of us logically might presume, that it's unlikely that a claim of $47,000 would result in $295,000 in damages. But that's what the expert indicated, that the insurance companies tend to penalize insureds for smaller claims to make up for the larger claims for which they can't collect. Was that Rubenstein's testimony? Was he the expert on that? That was Mr. Pfeiffer. Pfeiffer. Steven Pfeiffer. What was the exact out-of-pocket loss that was caused by this workman's compensation mistake? Well, the trial was held in 2000, and Mr. Pfeiffer testified that Prolease's premiums would be affected in 2001, 2002, and 2003. Well, what was the evidence? Were they affected? Yes, they were. One part you're appealing from is a denial of any recovery on that. That's correct. On that issue. Now, what was your testimony? Where can we find it in the record on the exact out-of-pocket loss that you sustained, that Prolease sustained? Well, this is why you have an expert, because it's like a situation where you have an automobile accident and someone is hurt, and there's testimony that he won't be able to work for five years. And so you set up some reserves, but you don't know the exact amount of the loss. Right. But that's why you need an expert, because of how technical this is, and because of the fact that the premiums are not affected until the first full year after the year in which the claim occurred. And there's no evidence of really what your actual premium experience was? At that point, we could not provide that evidence because those years. But just the answer is no? Yes, sir. Okay. And there's no testimony from the insurance company saying they are going to raise rates based on this incident? They could raise rates based on other, you know, inflation or other underwriting considerations. Well, but the EMOD, the E-M-O-D formula, which is computed by a national organization, is sent out to all insurance companies. So even if Prolease had not used Liberty Mutual in these years, 2001, 2 or 3, those companies would still penalize Prolease for that claim. And that's what Stephen Pfeiffer... That's exactly what he testified. And in his view, it didn't make any difference if the claim was an error and there was a recovery back of monies paid out. That was exactly his testimony. Well, it is somewhat. I mean, I must say I'm sure in practice over a number of decades, a couple of decades, I represented some people suing insurance companies and some insurance companies. And this one sounds a little counterintuitive. I have said that as well, that it is counterintuitive. But that's exactly what Mr. Pfeiffer testified to. And that's why we needed an expert, because of how the underwriting is performed. Did the district, did the judge in the memorandum of decision order say anything specifically about the Pfeiffer testimony? What he said was that it was, I think he said it was unlikely that a claim of $47,000 would result in damages of $295,000. So now, isn't that, I mean, damages, but the law in most states, we're dealing with state law, most state law gives the trier effect a lot of discretion on damages issues. And so why can't the judge make a conclusion like that, notwithstanding your expert's testimony? Well, the reason would be is that if the court determines that an area needs technical testimony and qualifies someone as an expert, the court doesn't have to accept the expert without question. But when you have an expert who hasn't been rebutted, the court has to give clear and convincing reasons to disregard that testimony. And essentially what the court did here was more or less to speculate or to give its own hunch by saying that it's unlikely that one $40,000 claim would translate into thousands of dollars of losses. Okay. Thank you. And we took you over your time by a little more than five minutes with our questioning, so we will let Ms. Carey have a few minutes extra if she needs.  May it please the Court, Your Honor. I'm Jenny Carey and I represent White Cloud in this matter. I don't want to get you off whatever argument you've planned, but while it's fresh in our minds, what's wrong, if anything, with Mr. Goldschmidt's argument that if they have uncontested expert testimony of damage that the district court's in kind of a box and needs to credit it without more, without more reasons that are given? Well, there's several things wrong with it. The first thing is that I don't know that it actually was uncontested. Can you move your mic a little closer? Is this better? That's better. Okay. The first thing that's wrong with the testimony is that the district court, and I believe the district court said this in its memorandum opinion. The first thing that's wrong with it is that while Mr. Pfeiffer did testify that in certain cases premiums can be increased, there was no testimony in this case that they were, in fact, increased. And the Court noted that in its memorandum opinion and said that since there wasn't any testimony or any evidence that the premiums were, in fact, increased, then where are the damages? The other problem is that if there were damages, if the insurance company actually did intend to raise the premiums, then why didn't Prolease provide testimony from the insurance carrier? That's where you would get the actual proof that Prolease was going to, in fact, incur damages. But there was no such testimony. I see that the judge referred to the statement of Mr. Marban that Marban had assurances from Liberty Mutual that it would not consider this particular Hopkins claim in an assessment of loss rating. So the judge clearly is relying on that Marban testimony. What's your position on the contention that Mr. Goldschmidt makes that Marban's statement in that respect was hearsay that was objected to? Well, part of my position is that if that wasn't addressed in the record at that level and it wasn't really addressed in the briefs, then it shouldn't be an issue here. Well, he said it was addressed in the trial record that he objected to the Marban testimony, and he said it was addressed in a post-trial memorandum, post-hearing memorandum to the district court. I guess if it wasn't addressed in this big stack of briefs we've got here now, it may be waived on the appeal. But is that or are you saying it wasn't addressed in his briefing here? I'm saying I believe there was like a parenthesis that said which, by the way, was not addressed in the Marban testimony. But that's the extent of it. I'd be happy to brief that issue further if you'd like. I can't off the top of my head think of what the hearsay exception is. Okay. No, that's fine. If we think we need any more, we'll ask you about it. Okay. Go ahead. There's a couple of other things I'd like to address on the damages issue. The first thing is that police has said that it's inappropriate or not right that the judge looked at or found Pfeiffer's testimony questionable or counterintuitive. But the judge in this case was – it was a trial court or it was a trial – it was a court trial, excuse me. So it was all right for the judge, pursuant to the rules, to weigh all the testimony and look at the credibility of all the witnesses and reach a conclusion based on all the evidence and all the inferences, just as a jury would. So in this case, there's – it's not inappropriate what the judge did if, in fact, the judge did choose to disbelieve Pfeiffer. But there's another bit of evidence here. I'm just fascinated sometimes by these hearsay issues. In footnote 65 of the judge's memorandum in order, he recites or it's recited that Mr. Pfeiffer said that the Hopkins claim would virtually guarantee a premium increase, but then the court notes Tony Marban testified that this would not occur. Now, I know from the argument that part of what Mr. Marban said was that he got an assurance from Liberty Mutual it wouldn't occur, which is challenged as hearsay. But did Marban give any independent basis for saying it wouldn't occur? I don't believe so, Your Honor, except for perhaps his own education or history with insurance companies. Well, he could have – he could – he could have experience like that to give a testimony that, in his view, it wouldn't occur. I just don't know what he did do, what his testimony was. We can check. Can you tell me where that is testimony? In the record? Is it in the record? I can. Just a minute, please. Your Honor, I don't know that his – I don't think that his testimony is in the record specifically. I believe it was referenced by the court's memorandum decision. Oh, okay. Well, it would be in the trial record if we need it. We can get it if we need it. Okay. Thank you. But wouldn't – regardless of the hearsay and so on, wouldn't pro-staff or pro-leaf have the burden of proving here that a premium increase did take place? That's our contention, Your Honor. And would we ever do that? And there was no proof that a premium did occur or was going to occur in the future. And so what is there before us? You concede that there was no proof. That a premium was going to occur. Yeah. Or an increase in the premiums was going to occur. I concede that you produce no evidence of the premium increase. I concede that pro-lease did not provide any evidence that – Oh, okay. I've got the parties turned around. Yeah. You're representing White Claw. And it's our contention that pro-lease didn't – And you're saying there was no evidence of it. Correct. And that agrees with the trial court, right? Yes, Your Honor. And that brings me to another issue. Does the Court have any other questions on the damages issue? Okay. The other issue I'd like to address is the breach of fiduciary duty issue. The first thing I'd like to address in terms of breach of fiduciary duty is the fact that while pro-lease has argued that the court erred in determining that Mr. White did not breach his duty or his fiduciary duty, we don't really need to even get to that issue because the question is, so what? There's no damages. And there has been no proof of damages at all. But if we do have to get to that issue, what pro-lease has presented are basically questions over the evidence that the court heard. The court heard evidence that Mr. White didn't know about the mistaken reporting of the worker's comp claim and that he had no reason to know about it and that he did not intend for it to be reported as it was reported. And then there was evidence that maybe he should have known about it, or testimony, not evidence. Excuse me. But the problem is that does not get us, even if there was some believable evidence that Mr. White knew about it or should have known about it, the issue is whether the court's decision was clearly erroneous. And in this case, it was not because there's evidence that Mr. White didn't know about it or didn't intend for it to be wrong And if you look at the standard of review, there's no reason to reverse the district court's decision unless it was clearly erroneous. Let's assume it's certainly not clearly erroneous if the district court said there's no intentional breach of fiduciary duty. But what about the idea that there might be some fiduciary duty of care? Like if if he didn't know about it, but he was careless, if he was careless. There's evidence in the record to show that there was no reason for Mr. White to know that this was going on or that he was careless because it was his understanding from pro-lease that pro-lease was going to continue to provide the insurance. Now, again, there's evidence or pro-lease has pointed to testimony that says that he should have known. Well, again, we get to the issue of clearly erroneous. The judge in this case can look at all the testimony and all the evidence and draw inferences and conclusions and come up with his own decision. He was basically the jury in this case. He did what the jury would have done. So even if there were inferences or testimony that Mr. White should have known what was going on, the district court didn't believe it was enough to rise to the level of negligence. And because the standard is clearly erroneous and because the district court was free to draw inferences and conclusions or judge the credibility of the testimony, the decision he reached was not erroneous. Does that answer your question, Your Honor? I have one other question. You – you – and that relates to the set-off. On the set-off, they were given $612,000. Did they plead that? Pardon me? Did they plead the set-off? They did, Your Honor. And you are not appealing that? No. We're not appealing the set-off. The set-off arises in terms of the attorney fees. The district court did not award attorney fees to either party. Why not? Why isn't that demonstration of having a favorable verdict? Because we also prevailed. White Cloud also prevailed. So the district court determined that there wasn't a clear victor. We were able to enforce the promissory note, which Prolease was arguing was unenforceable. We also prevailed on three or four of the counterclaims that Prolease brought against White Cloud, including breach of fiduciary duty, misrepresentation and fraud. Those are not before us? You say three other counterclaims? No. The issues on the counterclaims are not before you, but we did bring up in the record and in the brief the fact that White – well, let me start from the beginning. Prolease appealed the district court's decision not to award it attorney fees, arguing that it was the prevailing party in this case because it received the set-off that it asked for. Our response is that, yes, they received the set-off, but we were able to enforce the promissory note, which they were trying or arguing should not be enforced. And also they lost on all of the counterclaims that they brought, and also we were, in fact, able to recover approximately $300,000, a little more than $300,000, under the promissory note when they were arguing that we shouldn't. They were arguing they got out of the full $1 million note, right? Correct. They were saying they were excused from any payment. Correct. And Judge McHale-Williams ends up giving them a $600,000 offset but enforcing the balance of the note. That's correct. Apart from the other claims that got adjusted. That's correct, Your Honor. So as I understood Judge Williams, the court reached the conclusion that as far as the That's correct, Your Honor. Like a lot of litigation. Unfortunately, that's also correct. Part of me is feeling like, why didn't we just go out and have a couple of beers and work this out? It would be a lot more pleasant experience that way. One other issue to address, I'm anticipating that Pro Lease is going to argue in their briefs that they were never contesting the enforceability of the promissory note. And therefore, White Cloud did not prevail on that issue because we didn't contest it. And I have two responses to that. First, in the district court's opinion, the district court did not base its decision that Pro Lease was not the prevailing party on only the fact that we were able to enforce the promissory note. They also based the district court also based it on the fact that we prevailed on the counterclaims and White Cloud lost on the counterclaims. And specifically, and granted, you kind of have to infer it. I don't know if infer is the right term. But I'll quote you something from the decision that supports what I'm saying. The Court said, Notwithstanding the fact that White Cloud prevailed on Pro Lease's counterclaims for misrepresentation and breach of fiduciary duty, Pro Lease insists that it is entitled to attorney fees. And so I think if you look at the entire opinion of the Court regarding attorney fees, the Court is looking at other factors. He's looking at, or it is looking at the whole case, not just the fact that we were able to enforce the promissory note. But, again, even if we were able to, even if it was just based on the fact that we were able to enforce the promissory note, Pro Lease's argument that they never argued that the promissory note was unenforceable should not, doesn't, is incorrect because, as the district court explained, the purchase agreement and the promissory note are inexplicable. There's no way to separate the two. And in all the counterclaims that the Pro Lease brought, they argued that the purchase agreement should not be enforced and, therefore, the promissory note shouldn't be enforced. So while the district court did use the words, White Cloud was able to successfully enforce the promissory note, I don't think the issue is specifically that. Did we enforce the promissory note or not? The issue, and did White, did Pro Lease dispute that the promissory note was, in fact, enforceable? The issue is, was White Cloud able to recover under the promissory note and successfully defend against the Pro Lease's counterclaims? And this, White Cloud was able to do. And, therefore, that's why we argue that it was the prevailing party, not Pro Lease. Okay. Counsel, just one last question. If we disagree with you on attorney fees, then you have no other issue here, really? That's correct, Your Honor. Okay. Thank you very much. I think that concludes the argument, and the case will be submitted. Thank you.
judges: Lay , Goodwin, Gould